[Cite as *NXT, Inc. v. CAS of New England, Inc.*, 2012-Ohio-5883.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   97923

## NTX, INC.

PLAINTIFF-APPELLANT

vs.

## CAS OF NEW ENGLAND, INC.

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED IN PART,
MODIFIED IN PART, AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CV-735950

BEFORE:   Keough, J., Rocco, P.J., and Kilbane, J.

RELEASED AND JOURNALIZED:   December 13, 2012

**ATTORNEY FOR APPELLANT**

John P. Malone, Jr.
Malone Law, LLC
614 W. Superior Avenue
Suite 1150
Cleveland, OH 44113

**ATTORNEY FOR APPELLEE**

Ronald A. Apelt
Apelt Law Firm, LLC
20600 Chagrin Blvd.
Suite 400
Shaker Heights, OH 44122

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, NTX, Inc. ("NTX"), appeals the trial court's decision entering judgment in favor of defendant-appellee, CAS of New England, Inc. ("CAS"). For the reasons that follow, we affirm in part, modify in part, and remand.

{¶2} NTX originally filed this action seeking payment on an account. According to NTX's complaint, CAS stopped payment on a check in the amount of $24,848.61 that it had sent to NTX. The check represented payment for goods that NTX sent to CAS. NTX requested damages in the amount represented by the check.

{¶3} In its answer, CAS admitted that it stopped payment on the check and that it owed NTX "a certain amount" for goods supplied by NTX pursuant to the invoices attached to the complaint. However, in its counterclaim, CAS alleged that NTX breached the blanket purchase order ("BPO") by refusing to send the Tech-2 units in compliance with the terms of the BPO. CAS requested damages in the amount of $23,850, which was the difference between the Tech-2 price CAS would have paid NTX for the units and the price CAS had to pay for the units from another supplier.

{¶4} In response to the counterclaim, NTX denied the allegations and set forth several affirmative defenses. NTX subsequently moved for summary judgment on its complaint, which the trial court granted and entered judgment in favor of NTX in the amount of $24,848.61. This ruling and the entry of this judgment is not in dispute in this appeal.

{¶5} CAS's counterclaim proceeded to a bench trial where the court heard the following evidence.

{¶6} CAS is a Massachusetts company in the business of re-selling and distributing automotive diagnostic tools. John Jenkins is CAS's principal executive officer. NTX is an Ohio company that supplies automotive diagnostic tools to distributors such as CAS. Robert Smith is the president of NTX, and Chris Geiser is a sales representative who primarily handled all business matters with CAS. NTX and CAS had an ongoing business relationship dating back to 2004 whereby NTX would supply CAS with various automotive diagnostic tools.

{¶7} Jenkins testified that he would routinely call Geiser and place an order for whatever parts or tools were needed. He testified regarding the ordering and shipping process he typically experienced with NTX: (1) he would place an order, (2) he would receive a confirmation of shipment from NTX, (3) the products ordered would be delivered, and (4) an invoice would be sent at a later date with the date of order, the amount owed, and the due date.

{¶8} In the fall of 2009, CAS requested bids from its suppliers for a diagnostic tool known as the Tech-2. Jenkins testified he was concerned about the rising cost of the Tech-2 units; thus he and Geiser "negotiated a price" for the units and agreed to a blanket purchase agreement. He testified that around September 23, 2009, he entered into a BPO with NTX for the units. Under the expressed terms of the BPO, CAS was obligated to purchased 60 Tech-2 units over a 12 month period at a fixed price of $3,150 per unit and

NTX was required to ship the units to CAS "upon request."

{¶9} The evidence presented at trial showed that CAS had made four requests for the shipment of the Tech-2 units. Each shipment contained four units, for a total of sixteen. These shipments occurred on October 23, 2009, November 12, 2009, January 12, 2010, and February 19, 2010. According to Jenkins, these shipments of the Tech-2 units were filled "almost immediately" when he requested them — "We would call up and say, we need four more and that would typically go out the door from NTX the same day or next day." The evidence showed that CAS promptly paid for each of these shipments.

{¶10} In late March 2010, Jenkins contacted Geiser and requested another shipment of four Tech-2 units. Jenkins testified that he did not get a "normal" response. He testified that at first he did not receive a response, and when he finally spoke to Geiser, he inquired why the Tech-2 units he requested were not shipped. Jenkins testified that Geiser advised him that the cost of the units had gone up and General Motors had raised the royalties; thus, according to Geiser, NTX could not honor the BPO pricing anymore.

{¶11} Accordingly, NTX wanted to renegotiate the terms of the BPO. At first it proposed raising the price of the Tech-2 units, which Jenkins declined. NTX also proposed changing the shipping terms, such that NTX would ship all remaining Tech-2 units under the BPO, and CAS would pay for the units up front, which Jenkins testified would have been financially impossible. After an exchange of emails, Jenkins was

advised by Geiser that NTX would honor the price listed in the BPO and continue to do business as agreed, but that CAS had to send payment on its account for all outstanding invoices for products unrelated to the Tech-2, even if the invoices were not yet due. The evidence showed that when Jenkins requested the Tech-2 units, the invoices at issue were only two weeks old.

{¶12} According to Jenkins, he attempted to speak with Smith regarding his frustration with NTX, but Smith "hung up" on him. Jenkins testified that a delay in payment had never affected prior orders with NTX; thus he did not understand NTX's delay in shipping the Tech-2 units. Moreover, he testified that in all his prior dealings with NTX, payment was never required before items were shipped. Typically, the shipments were sent and then Jenkins would receive an invoice.

{¶13} Nevertheless, Jenkins agreed to pay the outstanding invoices because he felt he was "being held hostage" due to the fact that the Tech-2 units were a substantial portion of CAS's business and a delay in receiving them would cause CAS financial difficulties and create friction with clients.

{¶14} Jenkins advised NTX that he would send the check, and just like prior orders, wanted a confirmation of shipment when NTX received the check. Jenkins testified that he sent the check for $24,848.61, which represented the amount of the outstanding invoices, on Thursday, May 5, 2010. Even though NTX received the check on May 6, Jenkins never received a response from NTX. He sent an email on Sunday, May 9, inquiring about the delay in confirmation or shipment of the Tech-2 units. On

Monday, May 10, when he did not receive a confirmation of shipment, he issued a stop payment order on the check sent. Jenkins testified that he then learned that the Tech-2 units had never been sent. According to Jenkins, the last time he spoke with anyone from NTX was when he emailed them on May 9.

{¶15} Jenkins testified he had to contract with another supplier, Robert Bosch Corp., for the Tech-2 units. Bosch's unit price was $3,746.25, which was $596.25 more than the unit price negotiated with NTX. CAS purchased 40 units from Bosch from July 30, 2010 to March 22, 2011.

{¶16} Smith testified that he was alerted by his credit department that CAS was over its credit limit when Jenkins requested the March Tech-2 shipment. According to Smith, the agreement reached with Jenkins was that CAS would send a check for the invoices and NTX would ship the units after the check cleared with the bank. According to Smith, a shipment would usually take ten days. Smith testified that when Jenkins stopped payment on the check, the order for the Tech-2 units was "in motion." On cross-examination, Smith testified he was unaware of the BPO with CAS until the request for units was made. Additionally, he denied that (1) the BPO was valid, (2) he told Geiser that CAS had to pay for all the Tech-2 units up front, (3) he told Geiser to increase the price of the Tech-2 units, or (4) he ever spoke with Jenkins.

{¶17} The trial court entered judgment in favor of CAS on its counterclaim and awarded damages to CAS in the amount of $23,850.

{¶18} NTX appeals, raising three assignments of error.

## I. R.C. Chapter 1302

**{¶19}** In its first assignment of error, NTX argues that the trial court erred in holding that the May 2010 agreement and modification of the September 2009 purchase order was unenforceable for want of consideration because the contract was for the sale of goods between merchants, and did not require consideration to make a modification enforceable.

**{¶20}** NTX essentially argues that because the BPO between the parties fell within the provisions of R.C. Chapter 1302, no consideration was necessary for NTX to modify the BPO's terms in May 2010. R.C. 1302.12(A) provides that "[a]n agreement modifying a contract within sections 1302.01 to 1302.98, inclusive, of the Revised Code, needs no consideration to be binding." However, 1302.12(C) states that "[t]he requirements of section 1302.04 [the Statute of Frauds] must be satisfied if the contract as modified is within its provisions." The BPO in this case fell within R.C. 1302.04. *NSK Indus., Inc. v. Bayloff Stamped Prods. Kinsman, Inc.*, 9th Dist. No. 24777, 2010-Ohio-1171.

**{¶21}** However, reviewing NTX's answer to CAS's counterclaim, we find that NTX failed to raise the application of R.C. 1302.12 to the BPO. The application of a provision contained in a statute constitutes an affirmative defense. *See Youngstown Steel & Alloy Corp. v. Auto. Sprinkler Corp. of Am.*, 7th Dist. Nos. 78 C.A. 180 and 78 C.A. 181, 1980 Ohio App. LEXIS 13954 (Jan. 22, 1980). Pursuant to Civ.R. 8(C) and 12(G), affirmative defenses must be raised in a responsive pleading or they are waived. *Mason*

*v. Myers*, 140 Ohio App.3d 474, 748 N.E.2d 100 (3d Dist.2000). The trial court, therefore, did not err in failing to apply R.C. 1302.12; NTX's first assignment of error is overruled.

## II.   Consideration

{¶22} In its second assignment of error, NTX argues that the trial court erred by holding that the May 2010 agreement was not supported by consideration.   NTX argues that the parties entered into a new contract that "modified and superseded" the original contract when the parties "agreed" that no further shipments of Tech-2 units would be made until CAS paid its outstanding but unrelated invoices.

{¶23} A review of the trial court's written opinion shows that it did not find that a modification existed.   The trial court's language describing the modification as "proposed" is indicative that it was merely addressing NTX's argument that the parties entered into a modification.   The trial court clearly stated that in paragraphs six and eight of its written opinion that NTX breached the original contract with CAS when it did not ship the units when requested.

{¶24} Whether the trial court's conclusion regarding modification is correct is of no consequence.   Moreover, whether or not the alleged "modification" was supported by consideration is irrelevant because the breach of contract occurred when NTX did not ship the Tech-2 units "upon request" as provided in the BPO.   *Booth v. Bob Caldwell Dodge Country*, 10th Dist. No. 95APE 10-1367, 1996 Ohio App. LEXIS 1762 (Apr. 30, 1996); *Natl. City Bank of Cleveland v. Erskine & Sons, Inc.*, 158 Ohio St. 450, 461, 110

N.E.2d 598 (1953) (definition of breach of contract includes failure to perform any promise forming whole or part of a contract). Accordingly, we need not reach the issue of consideration because NTX breached the terms of the BPO when it failed to ship the Tech-2 units.

{¶25} Accordingly, regardless of any agreement or conditional payment or conditioned shipment, NTX breached the BPO when it failed to ship the Tech-2 units "upon request" when CAS requested a shipment of four Tech-2 units in March 2010. It was not until May, when NTX unilaterally conditioned any additional shipment of the Tech-2 units on the payment of invoices for unrelated products that were not yet due or outstanding. This unilateral condition of shipment does not constitute a modification of the contract. Accordingly, no consideration was required.

{¶26} Morever, we find NTX's argument that it did not ship CAS the Tech-2 units because CAS was over its credit limit unpersuasive. The BPO was a separate contract between NTX and CAS and no evidence was presented that it was subject to any credit limit. The credit limit was established in 2008, prior to the BPO being executed. Moreover, a review of the exhibits presented at trial demonstrates that CAS was over its $10,000 credit limit on at least two prior occasions, yet NTX continued filling CAS's orders. Therefore, we find that NTX's "over the credit limit" reasoning for not sending the Tech-2 units was merely a pretext for the fact that NTX could no longer obtain the Tech-2 units at a cost that would be profitable to NTX.

{¶27} Accordingly, we find that the trial court's judgment in favor of CAS is

supported by competent, credible evidence and not against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). NTX's second assignment of error is overruled.

### III. Damages

**{¶28}** In its final assignment of error, NTX argues that the trial court erred in awarding CAS damages because CAS did not prove by a preponderance of the evidence that CAS incurred any, or what amount of damages. The trial court held that as a result of NTX's breach, CAS was forced to obtain 40 Tech-2 units from another supplier at an increased cost, thus causing CAS to suffer $23,850 in damages.

**{¶29}** In a breach of contract case, the damages award should place the injured party only in as good a position as it would have been in but for the breach. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996). Such compensatory damages are limited to actual loss, which must be established with reasonable certainty. *Id.*

**{¶30}** The testimony and evidence showed that although CAS purchased 40 Tech-2 units from another supplier at a higher price, only 16 of those units were purchased within the time before the contract with NTX would have expired. No evidence was presented by CAS that it would or could have purchased the remaining units from NTX within the contract period but for the breach. Accordingly, CAS is only entitled to damages on its counterclaim in the amount of $9,540, which is the difference between NTX and Bosch's price multiplied by the 16 Tech-2 units purchased during the

BPO contract time period.

{¶31} Accordingly, we affirm the trial court's decision entering judgment in favor of CAS on its counterclaim; however, we modify the damages awarded to CAS to the amount of $9,540.

{¶32} Judgment affirmed in part, modified in part, and remanded for the trial court to enter judgment in favor of CAS and award damages in the modified amount reflected in this opinion.

It is ordered that the parties share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
KENNETH A. ROCCO, P.J., DISSENTS WITH SEPARATE OPINION.

KENNETH A. ROCCO, P.J., DISSENTING:

{¶33} In my opinion, the record reflects that the parties bargained for a modified BPO, that the modified BPO was supported by adequate consideration, and that CAS breached the modified agreement. Accordingly, I would sustain NTX's second

assignment of error and reverse the trial court's final judgment.

**{¶34}** Under the original terms of the BPO, starting in September 2009, NTX was to supply to CAS over a 12-month period sixty units of the Tech-2. But by February 2010, CAS sent only four requests to NTX for four Tech-2 units. Thus, although NTX sent the units immediately each time, out of the sixty units that CAS had contracted to buy within the year from NTX, in the first six months of the contract CAS actually purchased only sixteen.

**{¶35}** By the six-month mark of the BPO, neither party was satisfied with the arrangement. NTX was paying more per unit and was permitting CAS to exceed its credit limit. CAS's business was not as robust as Jenkins hoped when he originally agreed to the BPO, and CAS did not require as many Tech-2 units as Jenkins had originally expected. It was not commercially reasonable for CAS to expect NTX to ship still more product, even under the BPO, without some payment on CAS's outstanding account.

**{¶36}** Therefore, in March 2010, Geiser contacted Jenkins and indicated that his company would not send a requested shipment of four additional units to CAS without advance payment for the remaining units. Smith testified that he directed Geiser to make the call because by that time: (1) CAS was well over its credit limit with NTX for other purchases; (2) NTX currently had to pay its supplier a higher per-unit price for the Tech-2 units; (3) Smith became concerned that CAS would not purchase the entire complement of sixty units based upon its order rate; and (4) NTX could not afford to

"store" all the remaining units due to CAS under the BPO without an assurance that CAS would pay for them. Jenkins refused.

{¶37} In late April 2010, acting at Smith's directive, Geiser notified Jenkins that NTX would process the most recent order CAS placed as long as CAS paid all outstanding invoices for other items NTX had already shipped. CAS did not dispute it owed payment for these items, and this action would bring CAS more into line with its credit limit with NTX. Jenkins acquiesced.

{¶38} The situation presented in this case was one of an oral modification that was supported by "new and distinct consideration." *See Coldwell Banker Res. Real Estate Servs. v. Sophista Homes, Inc.*, 2d Dist. No. CA-13191, 1992 Ohio App. LEXIS 5474 (Oct. 26,1992). CAS had not been purchasing the Tech-2 units at a rate contemplated by the BPO. NTX offered to send units, notwithstanding, so long as CAS would pay down its outstanding credit limit. The parties arrived at a mutually beneficial modification in light of the market realities that both parties were facing.

{¶39} However, the evidence indicates that CAS then breached the modified BPO. Jenkins stated that he sent the check for the outstanding invoices from Massachusetts to NTX in Ohio on a Thursday. Jenkins admitted he stopped payment on the check the following Monday, i.e., one business day later. Although Jenkins testified that NTX ordinarily sent the requested units immediately, he did not indicate the amount of time NTX required to process CAS's requests.

{¶40} CAS's conduct subsequent to stopping payment on the check supplies

further evidence that CAS participated in a modification of the original BPO and that it was in CAS's best interest to do so. Jenkins admitted that he never again contacted NTX to acquire any more Tech-2 units; thus, he did not seek specific performance of the BPO. He further acknowledged that CAS did not purchase another forty units from another supplier within the remaining time frame of the BPO.

{¶41} Smith testified that the check was dishonored while the next shipment was "in motion," so "everything stopped" on NTX's end. Simply put, the evidence showed that although Jenkins agreed to the modification, he changed his mind before NTX had the opportunity to perform its obligation. Thus, NTX kept the Tech-2 units CAS had requested, but eventually was forced to file suit to collect on CAS's outstanding account.

{¶42} The foregoing evidence demonstrates that CAS agreed to modify the BPO, that NTX was prepared to perform its obligation under the modification, but that CAS repudiated the modification before NTX had an adequate opportunity to ship the units. For this reason, CAS is not entitled to any damages. Accordingly, I would sustain NTX's second assignment of error and reverse the trial court's final judgment.